United States District Court
Southern District of Texas
ENTERED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**—BROWNSVILLE DIVISION—**

JAN **2 0** 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk ⟶

| | | |
|---|---|---|
| GUSTAVO GARZA | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-08-084 |
| | § | |
| JUAN ANGEL GUERRA, Individually | § | |
| and in his Official Capacity, COUNTY | § | |
| OF WILLACY, AND ROY TAMEZ, | § | |
| Individually and in his Official Capacity, | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion to Dismiss filed by Defendants Tamez and Willacy County (DE

19). Plaintiff's Original Complaint was dismissed without prejudice on April 30, 2008 (DE 12).[1]

On August 27, 2008, Plaintiff filed a First Amended Complaint (DE 15). Defendant Guerra filed

an answer with jury demand on September 12, 2008 (DE 18), and does not join issue with this

motion. Having considered the motion, the response, and the reply, the Court is of the opinion that

the motion should be **GRANTED** in part and **DENIED** in part.

**I.     BACKGROUND**

Gustavo Garza ("Plaintiff") initiated this lawsuit against Juan Angel Guerra ("Guerra"), the

---

[1] The Court granted Defendants' first motion to dismiss without prejudice because Plaintiff did not file an
opposition within the time required under Southern District of Texas Local Rules 7.3 and 7.4 (DE 12). Defendants
would have Plaintiff's failure to respond to that motion act as a binding "representation of no opposition" to *this*
motion, and thereby argue that in refiling his First Amended Complaint, containing essentially the same allegations
as the Original Complaint, Plaintiff acted frivolously in violation of F.R.Civ.P. 11. Defs.' Mot. at 6-7. Defendants
misconceive the Court's order. By granting Defendants' first Motion to Dismiss without prejudice, Plaintiff was not
barred from filing an amended complaint containing the same or similar allegations. Indeed, the Court's July 2,
2008 Scheduling Order (DE 14), entered *after* the Court dismissed Plaintiff's Original Complaint, directed that new
parties be joined by August 29, 2008. Plaintiff complied with the Scheduling Order when he filed his First Amended
Complaint on August 27, 2008 (DE 15). Defendants request for Rule 11 sanctions, itself defective given that it was
not made separately from any other motion as required by F.R.Civ.P. 11(c)(2), is therefore DENIED with prejudice.

former District Attorney of Willacy County,[2] Roy Tamez ("Tamez"), an investigator for the District Attorney's office, and Willacy County pursuant to 42 U.S.C. § 1983.  Plaintiff alleges he was unlawfully arrested on the basis of a false affidavit, in violation of his Fourteenth Amendment due process rights – a violation he also attributes to Willacy County's policy and custom of hiring and retaining unqualified and untrained personnel.  Plaintiff also asserts Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1985, and that he was falsely imprisoned.

Specifically, the Amended Complaint alleges as follows.[3]  On January 11, 2007, Plaintiff, a sheriff's deputy (and a practicing attorney) in Willacy County, was appointed to act as a special prosecutor at the request of a grand jury by the judge of the 197th Judicial District Court of Willacy County, to investigate certain criminal accusations against Guerra, who was then the Willacy County District Attorney.  As part of the investigative process, Plaintiff sought and obtained a search warrant for the offices of the Willacy County District Attorney from the district judge of the 103rd Judicial District Court of Cameron County, Texas – a neighboring county.  This court also has jurisdiction over Willacy County.  In order to avoid disruption of the Willacy County Courthouse and to execute the warrant in a secure manner, Plaintiff decided to execute the search warrant on Sunday, February 11, 2007, a day in which the courthouse would normally be closed.

Again, according to the Amended Complaint, Guerra somehow learned of the impending search warrant, and along with other unknown persons during the afternoon or evening of February

_____

[2] Guerra was defeated in the March 2008 primary election; thus, his most recent term ended on December 31, 2008.

[3] The Court accepts as true the factual allegations recited herein, as it must on review of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir.1995).  The recited facts, therefore, are not findings by this Court, but are merely gleaned from the Plaintiff's Amended Complaint.

-2-

10, 2007, contacted one or more members of another impaneled grand jury, requesting a meeting on Sunday, February 11, 2007 for the sole purpose of interfering and obstructing with the execution of the warrant and the investigation being conducted by Plaintiff.  Guerra was fully aware and allegedly intended the supposed convening of the grand jury to be a charade to obstruct the execution of the warrant because: (1) the grand jury bailiff was never notified of this Sunday meeting and was not present although required to be present with the grand jury at all times in accordance with Texas Code of Criminal Procedure article 19.37;[4] (2) there was no official court reporter present to record the proceedings of the grand jury and record any votes; and (3) the clerk of the court was never notified of this session of the grand jury and therefore could not accept any indictments that may have been presented by such grand jury.

Plaintiff alleges that on Sunday, February 11, 2007, when the Plaintiff and law enforcement officers arrived at the Willacy County Courthouse to execute the warrant, Guerra and Tamez, as had been their plan, advised the officers that were present to execute the warrant that a grand jury was in session and that intrusion into the District Attorney's offices would constitute interference with a grand jury which was in session.  Guerra summoned local news media to record the confrontation. Seeking to avoid a controversy while still trying to execute the warrant and preserve potentially relevant evidence, the Plaintiff and law enforcement officers requested a meeting with the grand jury foreperson to explain the need to execute the warrant and to secure potentially relevant evidence. Fearing that Guerra and others might try to use grand jurors to remove evidence from the premises, the Plaintiff and others advised the foreperson that all persons might need to be searched to insure

---

[4] Article 19.37 "Bailiff's duties" provides that "[a] bailiff is to obey the instructions of the foreman, to summon all witnesses, and generally, to perform all such duties as the foreman may require of him.  One bailiff shall be always with the grand jury, if two or more are appointed."  Tex. Code Crim. Proc. art. 19.37.

that potential evidence was not being removed from the premises of the Willacy County District Attorney's office.  Plaintiff met with the grand jury foreperson and assistant foreperson outside the courthouse in the presence of Guerra, Tamez, and law enforcement officers and explained the need to execute the warrant.  During this meeting it was learned that neither the district clerk, the court reporter, nor a bailiff was present with the grand jurors.  Within minutes of this discussion, the grand jury adjourned and left the building, having informed Plaintiff and law enforcement parties present that they had not been in the offices of the District Attorney.   Immediately thereafter, law enforcement personnel executed the warrant and seized evidence from Guerra's office.  Since he allegedly continued to obstruct the process of executing the warrant, Guerra was arrested, and subsequently indicted on March 21, 2007.

On March 27, 2007, Tamez, with the assistance and acquiescence of Guerra, prepared an affidavit, knowing it to be false, to support the issuance of an arrest warrant against the Plaintiff.[5]

_____

[5] In its entirety, the affidavit submitted to the justice of the peace by Tamez reads as follows:

My name is Roy Tamez.  I am a duly authorize [sic] investigator for the District Attorney of Willacy County, Texas.  On the 27th of March 2007 I received a sworn statement from a Grand Juror.  She attested to me that she was sworn in to sit as a grand juror for the County of Willacy, Texas on January 11, 2007.  Said Juror stated that on February 11, 2007, at about 2:00 p.m. the Grand Jury met at Raymondville Courthouse to conduct grand jury business.  At the meeting all the jurors were there and while talking and listening to Mr. Juan Angel Guerra, officers came in and asked for the foreman [sic] to please step out of the building.  As a juror, said juror went to see what was going on.  Said Juror was taken out to the front of the courthouse ground where Mr. Gus Garza [Plaintiff], Uvaldo Zamora[,] and other officers were there speaking to the foreman [sic].  They were telling her that we were not to be meeting and that had to leave the courthouse or that they would be arrested.  Said Juror and foreman [sic] told Gustavo Garza that they were meeting as grand jurors.  That did not seem to matter to Gustavo Garza.  Other jurors came down while Gustavo Garza was still speaking to them and at that time all broke loose.  There were cameras all over the place.  All the rest of the jurors got scared and they all got their belongings and left.  Days later said juror was called to meet at the courthouse with [a judge] and the foreman [sic] wanted for everyone to tell [the judge] how they felt.  [The judge] listened to them and the majority felt scared, so by being scared and by the media also, the judge went ahead and dismissed the jury from their duties.  In speaking to said grand juror and after reading juror's affidavit it is clear to met that Gustavo Garza and Uvaldo Zamora committed an offense against the State of Texas.  The victim at the time had status as a juror, in which event the offense is a felony of the second degree.

-4-

A magistrate/justice of the peace of Willacy County signed the bottom of Tamez' affidavit and an

arrest warrant, accusing Plaintiff of Obstruction or Retaliation. Pl.'s Resp., Ex. A. The sole purpose

in seeking Plaintiff's arrest was retaliation for the Plaintiff's role in acting as a special prosecutor

in the investigation of Guerra.

On April 4, 2007, Plaintiff was arrested for the false and contrived charge of Obstruction or

Retaliation, a felony as defined by Texas Penal Code section 36.06,[6] and his mug shots were released

to the media.  Subsequently, Guerra tried unsuccessfully to indict the Plaintiff for the same charge.

Finally, Plaintiff alleges it was well known by the community in general that Willacy County,

through Guerra, had staffed the Willacy County Attorney's office with persons having prior criminal

records and who were unqualified to hold staff positions in the county attorney's office.  For

example, Tamez was employed by Willacy County as a criminal investigator, even though he is not

---

> In conclusion, I have reason to believe and do believe that Gustavo Garza and Uvaldo
> Zamora did commit the offense of Obstruction or Retaliation — T.P.C. 36.06 — Second Degree
> Felony[.]. AFFIDAVIT THEREBY, INCORPORATED BY REFERENCE, AGAINST THE PEACE
> AND DIGNITY OF THE STATE OF TEXAS.  [/s/] Roy Tamez, Complainant.

Pl's. Resp., Exhibit A at 2.  Plaintiff alleges the affidavit is false because Tamez' affidavit did not disclose: (1) that
Tamez, was personally present at the scene when the purported offense of Obstruction or Retaliation occurred
(concealing his eye-witness role); (2) that the Plaintiff and Police Chief of Raymondville, Texas (a town in Willacy
County), Uvaldo Zamora, were in the process of executing a lawfully obtained search warrant of the office of the
Willacy County District Attorney, Tamez' employer at the time the supposed offense occurred; (3) that the plaintiff
was acting in his capacity as a special prosecutor in charge of investigating Tamez' boss, Guerra, or (4) that the
grand jurors were meeting without the presence of their bailiff as required by law, the district clerk, or a reporter.
Pl.'s Am. Compl. ¶ 16.

[6] Section 36.06 "Obstruction or Retaliation" provides in pertinent part that:

[a] person commits an offense if he intentionally or knowingly harms or threatens to harm another by
an unlawful act [ ] in retaliation for or on account of the service or status of another as a [ ] public
servant, witness prospective witness, or informant. . . .  An offense under this section is a felony of the
third degree unless the victim of the offense was . . . threatened because of the victim's service or status
as a juror, in which event the offense is a felony of the second degree.

Tex. Pen. Code § 36.06 (Vernon 2003).

a certified peace officer.  Willacy County also employed another criminal investigator who is not a certified peace officer and is, in fact, a disbarred attorney.  The county attorney's chief secretary has a prior conviction for theft.  In spite of the lack of qualifications and/or training on the part of the county attorney's staff, led by Guerra, Willacy County failed and refused to screen its employees or to enforce its county personnel policies.

## II.    DEFENDANTS' MOTION

In their present motion, Defendants Tamez and Willacy County seek dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, Defendants assert Plaintiff fails to state facts showing that he was not given due process, as complaints for false arrest are not properly brought as due process violations under the Fourteenth Amendment.  Even if Plaintiff's false arrest claim had been properly alleged under the Fourth Amendment's unreasonable seizure framework, Defendants assert they did not "seize" Plaintiff,[7] and therefore, did not violate Plaintiff's Fourth Amendment rights.  Defendants also argue Plaintiff fails to state a claim for civil conspiracy under 42 U.S.C. § 1985 since Plaintiff did not allege Defendants' conspiracy stems from "some racial or perhaps otherwise class-based invidiously discriminatory animus."  Defs.' Mot. at 4.  To the extent Plaintiff's false arrest claim alleges Willacy County is liable for Plaintiff's arrest, Defendants assert Guerra – the Defendant District Attorney who is not a party to this motion – was acting in his prosecutorial capacity enforcing state penal law, and as such, was acting as an agent for the state, not of Willacy County, and therefore, is entitled to absolute prosecutorial immunity.  Using that logic, Tamez, an investigator for Guerra, was also acting as an agent for the state in a prosecutorial function, and thus, constitutional violations arising out of the alleged false arrest are not fairly

---

[7] The record before the Court does not reveal the identity of Plaintiff's arresting officer.

attributable to him, or to Willacy County. Lastly, Defendants assert Plaintiff cannot sue them for false imprisonment because it is an intentional tort, suit for which is barred by the Texas Tort Claims Act, as codified in TEX. CIV. PRAC. & REM. CODE § 101.057. Notably, Defendants make no assertion of qualified immunity – a doctrine that shields a governmental official from personal liability based on the performance of his discretionary functions. *Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004).

## III.   APPLICABLE STANDARD

Motions to dismiss are viewed with disfavor and are rarely granted. *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir.2000). In deciding a motion to dismiss under Rule 12(b)(6), the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd.*, 61 F.3d at 289. "Taking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove any set of facts that would entitle it to the relief it seeks," dismissal is proper. *Id.* It must appear beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir.1995) (alterations and citations omitted). The plaintiff cannot, however, simply state conclusory legal or factual allegations; rather he must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Landavazo v. Toro Co.*, 2008 WL 5111078, at *2 (5th Cir. Dec. 5, 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965).

-7-

## IV.    DISCUSSION

### A.    False Arrest Claim Under 42 U.S.C. § 1983

The question of whether Plaintiff's false arrest claim against Tamez and Willacy County should be dismissed for failure to state a claim upon which relief can be granted requires this Court to answer a series of questions.  First, the Court must address two challenges made to the form of Plaintiff's pleadings: (1) that Plaintiff's false arrest claim is improperly alleged under the Fourteenth Amendment instead of the Fourth Amendment; and (2) that Defendants did not personally seize Plaintiff, and thus Plaintiff's suit for false arrest must fail as against them.  Second, assuming the pleading hurdles can be surmounted, the Court must decide whether Tamez, as an employee of Willacy County, can be held liable in his individual capacity for Plaintiff's alleged false arrest.  Then, the Court must determine whether Tamez can be held liable in his official capacity – i.e., whether Willacy County can be held liable for Plaintiff's false arrest.  In turn, the "official-capacity" inquiry leads the Court to inquire whether (1) Plaintiff alleges facts sufficient to support a claim of municipal liability, and whether (2) even if Plaintiff's municipal liability allegations are sufficient to overcome dismissal, the Court must still dismiss Plaintiff's official capacity claim for false arrest on the ground that the District Attorney (Guerra), and by derivation, his investigator (Tamez), were acting on behalf of the state in a prosecutorial capacity (enforcing state penal law – Tex. Pen. Code § 36.06) when they swore out an allegedly false affidavit to procure Plaintiff's arrest such that their acts cannot be attributable to Willacy County.

### 1.    Problem of the Pleadings

#### a.    As to legal theory

In the complaint, Plaintiff alleged his "false arrest" cause of action under the due process

clause of the Fourteenth Amendment.  Pl.'s Am. Compl. ¶ 36.  It would have been more properly

alleged under the illegal seizure framework of the Fourth Amendment.  *Parm v. Shumate*, 513 F.3d

135, 142 (5th Cir. 2007) "[i]n order to prevail in a § 1983 claim for false arrest, a plaintiff must show

that he was arrested without probable cause in violation of the Fourth Amendment").  Defendants

argue dismissal is proper on that ground alone.  In the alternative, Defendants contend they cannot

be held liable for Plaintiff's alleged false arrest since they did not personally seize Plaintiff.  The

Court is unpersuaded by either of Defendants' assertions.

A complaint need not specify the correct legal theory, nor point to the right statute, to survive

a motion to dismiss.  *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434-35 (5th Cir. 2000).

Rather, the form of the complaint is not significant so long as it alleges facts upon which relief can

be granted, even if it fails to categorize correctly the legal theory giving rise to the claim.  *Dussouy*

*v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir.1981).  The rationale for this approach is that

the notice pleading requirements of Federal Rule of Civil Procedure 8 do not require an inordinate

amount of detail or precision.  *St. Paul Mercury Ins. Co.*, 224 F.3d at 434-35.  The function of a

complaint is to give the defendant fair notice of the plaintiff's claim and the grounds upon which the

plaintiff relies.  *Doss v. South Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir.1987) (citing *Conley*

*v. Gibson*, 355 U.S. 41, 47-48 (1957)).  Plaintiff gives Defendants fair notice of his claim and the

grounds upon which he relies.  *Doss*, 834 F.2d at 424.  He asserts Defendants caused him to be

arrested for a crime they knew he did not commit by swearing out a false affidavit, and states the

reasons why he believes the affidavit to be false.  Defendants conceded their awareness that Plaintiff

was really stating a claim for false arrest under the Fourth Amendment in their reply brief, which

reads that "[a]ssuming Plaintiff could amend his complaint to allege . . . [an] illegal seizure under

the 4th Amendment he still cannot survive dismissal." Defs.' Reply at 2.  Since Defendants clearly understand Plaintiff's false arrest claim, and the claim alleges facts upon which relief can be granted (more on that later), the Court declines to dismiss Plaintiff's Amended Complaint on the ground that it points to a constitutional amendment less-suited to describe the alleged wrong-doing.

### b.      As to properly named defendants

Defendants likewise err in arguing that plaintiffs claiming false arrest may only sue the actual officers who seize them.  The Supreme Court and Fifth Circuit have repeatedly held that § 1983 claims must be construed in light of common law tort principles, including holding individuals liable for the natural consequences of their actions.  *Pierson v. Ray*, 386 U.S. 547, 556-57 (1967); *cf. Rodriguez v. Ritchey*, 539 F.2d 394 (5th Cir. 1976) (stating that "§ 1983 should be read against the background of tort liability" and finding that investigative officers, as well as arresting officers, may be appropriate defendants in context of a federal *Bivens* suit for Fourth Amendment unlawful arrest); *see also Douhit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980); *but see Walker v. Harris*, 2000 WL 1310530, at *3 (N.D. Tex. Sept. 13, 2000) ("Harris was not the arresting officer[; t]hus, she can have no liability under § 1983 for false arrest").  The Court is less persuaded *Walker v. Harris* should control in the instant case because in that case, the plaintiff sued the defendant officer for false arrest and false imprisonment for acting as an undercover officer, and for "saying that [plaintiff] sold her drugs." *Walker*, 2000 WL 1310530, at *1.  In contrast to mere investigation, Tamez swore out an affidavit to procure Plaintiff's arrest and had it approved by a magistrate/justice of the peace, the natural result of which was Plaintiff's arrest.  *Douhit*, 619 F.2d at 532.

### 2.      Tamez' Liability in His Individual Capacity

The right to be free from arrest without probable cause is a clearly established constitutional

right. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). Arrest without probable cause includes the situation where an officer knowingly submits a false affidavit in order to obtain an arrest warrant. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). An affidavit may be falsified by including untrue statements that establish probable cause, or by omitting true statements, which if included, would vitiate probable cause. *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). The Fifth Circuit has held that even an officer who acts with malice in procuring a warrant will not be liable if the facts supporting the warrant are put before an impartial intermediary such as a magistrate. *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). The intermediary's impartial decision is said to "break the causal chain" and insulate the initiating party. *Id.* (citations omitted). The causal chain is broken, however, only where the malicious motive of the affiant officer does not lead them to withhold any relevant information from the magistrate. *Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986); *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988). Any misdirection of the magistrate by omission or commission perpetuates the taint of the original official behavior. *Hand*, 838 F.2d at 1427-28.

Plaintiff's complaint alleges facts sufficient to make a claim that Tamez' affidavit was falsified in violation of *Franks*. Specifically, he alleges that Tamez' affidavit did not disclose: (1) that Tamez was personally present at the scene when the purported offense of Obstruction or Retaliation occurred (concealing his eye-witness role); (2) that the Plaintiff and Police Chief of Raymondville, Texas (a town in Willacy County), Uvaldo Zamora, were in the process of executing a lawfully obtained search warrant of the office of the Willacy County District Attorney, Tamez' employer at the time the supposed offense occurred; (3) that the plaintiff was acting in his capacity as a special prosecutor in charge of investigating Tamez' boss, Guerra, or (4) that the grand jurors

were meeting without the presence of their bailiff as required by law. Pl.'s Am. Compl. ¶ 16. The Court finds, under a liberal construction of the Plaintiff's compliant, that omission of these facts, especially those concerning Plaintiff's capacity in approaching the grand jurors, could mislead a magistrate judge in determining whether probable cause existed that Plaintiff had committed the crime of Obstruction or Retaliation, as defined by Texas Penal Code § 36.06. *Kohler*, 470 F.3d at 1113. Accordingly, the Court hereby DENIES with prejudice Defendants' motion to dismiss Plaintiff's false arrest claim as to Tamez in his individual capacity. In doing so, the Court emphasizes that it is not making a binding determination that Plaintiff has established a false arrest claim against Tamez personally, only that Plaintiff's complaint states facts that, if true, are sufficient to make such a claim.

### 3.    Tamez' Liability in his Official Capacity

Plaintiff's complaint also charges Tamez in his official capacity for his alleged false arrest. If a complaint includes a claim against a government official in his official capacity, the claim is merely "another way of pleading an action against the entity of which the officer is an agent." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Therefore, the Court considers Plaintiff's false arrest claim against Tamez in his official capacity as a claim against Willacy County.

### a.    Municipal Liability

Under 42 U.S.C. § 1983, a county cannot be held liable on a theory of respondeat superior merely because it employs a tortfeasor. *Esteves*, 106 F.3d at 677. A city, county, parish, or other local government may be liable, however, for harm caused by the execution of an official policy or custom that deprives individuals of their constitutional rights (this is known generally as "municipal

liability"). *Id.* Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. 658 at 694. As to the first prong, the Fifth Circuit has held that the actions of an elected district attorney may be the actions of the county for § 1983 purposes. *Turner v. Upton County, Tex.*, 915 F.2d 133, 137 (5th Cir. 1990). Although there is some ambiguity in this language, the Court assumes for purposes of this motion that Guerra, as Willacy County's District Attorney, qualifies as a policymaker, and therefore satisfies the first prong of the *Monell* municipal liability test. As to the second prong, Plaintiff alleges Guerra maintained a policy and custom of hiring unqualified and untrained personnel. Pl.s' Am. Compl. ¶ 41. Contrary to Defendants' assertion, a policy and practice of hiring unqualified or untrained personnel can give rise to § 1983 liability if it actually causes injury. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Brown v. Bryan County, Okla.*, 219 F.3d 450, 457 (5th Cir. 2000). Thus, Plaintiff's complaint satisfies *Monell's* second requirement. As to the third prong, Plaintiff does not use the magic words "moving force" in his complaint. He does, however, allege that his false arrest was *caused* by the policy and custom of hiring unqualified persons. Specifically, Plaintiff states that a "consistent pattern of failing to hire qualified personnel and failure to properly train and supervise them over a period of many years . . . [was] the direct and proximate [cause] of . . . the arrest of the [P]laintiff." Pl.s' Am. Compl. ¶ 42. Moreover, Plaintiff supports his claim of a "consistent pattern" by pleading the following examples: (1) Defendants Guerra and Willacy County employed Tamez as a criminal investigator, even though he was not certified as a peace officer as required by Chapter

1701 of the Texas Occupation Code[8]; (2) Willacy County employed another criminal investigator who is not a certified peace officer and is a disbarred attorney; and (3) that Willacy County's chief secretary has a prior conviction for theft. *Id.* at ¶ 31. The Court finds these allegations sufficient to survive dismissal.

### b.    Prosecutorial Immunity

Having found Plaintiff's complaint adequately alleges municipal liability under *Monell*, the Court addresses Defendants' claim of derivative prosecutorial immunity as an alternative bar to Willacy County's "municipal liability."   A prosecutor enjoys absolute immunity from personal liability for damages under 42 U.S.C. § 1983 for actions taken in "initiating a prosecution and presenting the State's case" and those actions "intimately associated with the judicial phase of the criminal process." *Esteves*, 106 F.3d at 677.  Thus, when district attorneys and assistant district attorneys prosecute state law crimes,[9] they are clearly entitled to absolute prosecutorial immunity when performing acts within their role as prosecutors. *Ryland v. Shapiro*, 708 F.2d 967, 975 (5th Cir. 1983).  Likewise, the actions of a Texas district attorney within the scope of his prosecutorial

---

[8] Article 2.12 of the Texas Code of Criminal Procedure provides that "investigators of the district attorneys', criminal district attorneys', and county attorneys' offices are peace officers."  Section 1701.301 of the Texas Occupation Code provides that "a person may not appoint a person to serve as *an officer*, county jailer, or public security officer unless the person appointed holds an appropriate license issued by the commission."  Tex. Occ. Code § 1701.301 (emphasis added).  The word "officer" in § 1701.301 is defined in § 1701.001 to include "peace officer[s within the meaning of] Article 2.12, Code of Criminal Procedure."  Tex. Occ. Code § 1701.001(3). Thus, Tamez was required to hold a license from the commission to be a lawful investigator for the district attorney's office.

[9] County district attorneys and assistant district attorneys prosecute a variety of crimes, including local, county, and state law crimes.  The Supreme Court has held that when district attorneys and their assistants prosecute county or municipal law violations they are not agents of the state, but agents of the entity whose law they seek to enforce.  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (adopting functional, as opposed to status-based, approach to characterization of district attorneys for purposes of assessing scope of immunity and liability under § 1983). Hence, district attorneys' and assistant district attorneys' prosecutorial immunity does not vary depending on the body of law they enforce, but the entity to which their acts are attributable does change as the body of law they enforce changes. *Id.*

function during a state criminal proceeding do not constitute official policy for which a county can be held liable. *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995). The parties have not cited, however, and the Court has not found, any case in which the Fifth Circuit has held that a district attorney's investigator is an agent of the state acting in a prosecutorial capacity where he investigates or submits affidavits to enforce state penal law.

Other circuits that have extended prosecutorial immunity to investigators of district attorneys did so on the ground that it made little sense to exculpate the district attorney while leaving his subordinates open to suit, and by distinguishing investigators from ordinary police officers engaged in general law enforcement.[10] The Court is persuaded by these reasons, and therefore holds that investigators of district attorneys are entitled to absolute prosecutorial immunity for acts done within their prosecutorial role. *Ryland*, 708 F.2d at 975. Moreover, treating district attorneys' investigators the same for purposes of assessing their immunity weighs in favor of determining their agency status with the same functional approach the Supreme Court and Fifth Circuit use for district attorneys. For purposes of this opinion, that means if Tamez engages in lawful conduct to investigate a state law violation, he would be acting as an agent of the State of Texas and immune.

The Fifth Circuit, however, has held that state prosecutors are not entitled to absolute immunity when they perform functions outside their quasi-judicial functions of "initiating prosecutions and presenting the State's case." *Marrero*, 625 F.2d at 507 (quoting *Imbler v.*

---

[10] *See, e.g., Gobel v. Maricopa County*, 867 F.2d 1201, 1203 n.5 (9th Cir. 1989) (investigators, employed by a prosecutor and performing investigative work in connection with a criminal prosecution, are entitled to the same degree of immunity as prosecutors); *Norton v. Liddel*, 620 F.2d 1375, 1381-82 (10th Cir. 1980) (as to district attorney's investigators, it would hardly seem reasonable to exculpate the district attorney and to not immunize his underlings); *Waits v. McGowan*, 516 F.2d 203, 205 (3d Cir. 1975) (detective employed directly by and working under district attorney on specific matter related to prosecution is unlike ordinary police officer engaged in general law enforcement and exercising individual discretion; when function of prosecutor and detective are the same, the immunity they are accorded is the same).

*Pachtman*, 424 U.S. 409, 431 (1976).   Plaintiff's complaint alleges Guerra assisted Tamez in, or instructed Tamez to, draw up a false affidavit in order to secure Plaintiff's arrest for Obstruction or Retaliation, a state law crime defined in Tex. Pen. Code § 36.06.   Pl.'s Am. Compl. ¶ 24-25.   If proven, Guerra and Tamez would have committed perjury, which is not an action within the prosecutorial role.   *Marrero*, 625 F.2d at 505-07 ("though some activities a prosecutor undertakes prior to an indictment may be classified as quasi-judicial, such as interviewing grand jury witnesses, absolute immunity did not apply to prosecutor who participated in illegal search and seizure"); *see also Ryland*, 708 F.2d at 975 (alleged actions of prosecutors in falsifying death certificate and in covering up murder for period of eleven months, if proven, were actions performed outside their role as prosecutors and they were not entitled to defense of absolute immunity).   Thus, based on the allegations in the Amended Complaint, Tamez is not entitled to absolute prosecutorial immunity since his alleged act in swearing out a false affidavit could not be an action done within a lawful prosecutorial role.   *Ryland*, 708 F.2d at 875.

The question remains, however, whether Tamez in committing the alleged unlawful act of perjury was nevertheless acting in his capacity as an agent of the state, such that his unlawful acts are still not attributable to Willacy County.   The Fifth Circuit's opinion in *Krueger v. Reimer* is instructive on this point.   In that case, a Texas prisoner filed a civil rights action against a the District Attorney of Comal County and against a Texas state district judge, alleging that they conspired to deprive him of his right to appeal his state criminal conviction by denying his request to proceed *in forma pauperis* on appeal.   *Krueger*, 66 F.3d at 76.   The Fifth Circuit held that the district attorney was entitled to absolute prosecutorial immunity (and the state district judge entitled to absolute judicial immunity) because Krueger made no specific allegations that either official acted outside

the scope of his prosecutorial or judicial function. *Id.* at 77. The court noted, however, that "[i]f a district attorney exceeds the scope of his prosecutorial duties [when prosecuting *state law crimes*], a *county* may be held liable under certain limited circumstances." *Id.* (citing *Turner v. Upton County*, 915 F.2d at 137-138 (denying, *inter alia*, district attorney's motion to dismiss and holding county may be liable for acts of district attorney who entered into conspiracy with county sheriff, the ultimate repository of law enforcement power in the county) (emphasis added). It therefore appears that when a district attorney prosecuting a state law crime acts outside the scope of his prosecutorial role, his acts are no longer attributable to the state, but to the county in which the district attorney sits. Applying *Krueger's* rationale to the facts of this case, the Court holds that where a district attorneys' investigator acts outside his prosecutorial role in enforcing state law crimes, a county – not the state – may be held liable. *Krueger*, 66 F.2d at 77.

In summary, as a district attorney's investigator, Tamez is generally entitled to derivative prosecutorial immunity. Further, actions by Tamez within the lawful scope of his duties as an investigator, when made in furtherance of investigating state law crimes, are attributable to the State of Texas, not to Willacy County. In the instant case, however, Plaintiff alleges Tamez acted outside the lawful scope of his prosecutorial role, making him ineligible for prosecutorial immunity and, under *Krueger*, making that act attributable to Willacy County. In light of the foregoing, the Court hereby DENIES with prejudice Defendants' motion to dismiss Plaintiff's false arrest claim against Tamez in his official capacity.

### B. False Imprisonment

Plaintiff's complaint does not indicate whether his false imprisonment claim is being made under common law or as a constitutional tort under 42 U.S.C. § 1983. The intentional tort of false

imprisonment is normally within the province of state law. The essential elements are "(1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). The Texas Tort Claims Act waives sovereign immunity for some tortious acts of state officials, but specifically exempts intentional torts from that waiver. *Rivera v. City of San Antonio*, 2007 WL 1406426, at *4 (W.D. Tex. May 9, 2007) (noting that TEX. CIV. PRAC. & REM. CODE § 101.057(2) "excludes from the entire chapter claims 'arising out of assault, battery, false imprisonment, or any other intentional tort'"). Accordingly, to the extent Plaintiff's claim for false imprisonment is made under state common law against Tamez in his individual capacity, Defendants' motion to dismiss is GRANTED with prejudice.

Given that each of Plaintiff's other claims are based in federal law, a liberal reading of Plaintiff's complaint requires the Court to also construe Plaintiff's false imprisonment claim as a constitutional claim. False imprisonment is a 'constitutional tort' cognizable under § 1983.[11] *Whirl v. Kern*, 407 F.2d 781. 787-88 (5th Cir. 1968). As with the "constitutional tort" of false arrest, the "constitutional tort" of false imprisonment requires a plaintiff to show that the defendant lacked probable cause to arrest him. *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). The two claims differ only slightly in that false arrest focuses on the harm derived from being seized in violation of the Fourth Amendment without probable cause, while false imprisonment focuses on the harmed derived from being wrongfully detained in violation of the Fourteenth Amendment due process clause. *Thomas v. Kipperman*, 846 F.2d 1009, 1011 (5th Cir. 1988). Therefore, to establish

---

[11] Clearly, the Texas Tort Claims Act cannot immunize Texas officials from personal liability for the constitutional tort of false imprisonment, relief for which is provided under 42 U.S.C. § 1983, under basic supremacy principles. U.S. CONST., art. VI, cl.2 ("the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land "). Hence, the Court is unpersuaded by Defendants' claim of wholesale immunity as to Plaintiff's false imprisonment claim by virtue of the Texas Tort Claims Act. Defs.' Mot. at 5.

a cause of action for false imprisonment under § 1983, Plaintiff must show that Tamez caused him to be imprisoned without probable cause. *Douthit*, 619 F.2d at 532. Plaintiff has alleged that. He alleges Tamez (1) intended his arrest and confinement, (2) took acts to secure it by swearing out a false affidavit, (3) conscious that it was unsupported by probable cause. Pl.'s Am. Compl. ¶ 27. Accordingly, to the extent it is plead as a constitutional tort, the Court hereby DENIES with prejudice Defendants' motion to dismiss Plaintiff's false imprisonment claim against Tamez in his individual capacity.

As to Plaintiff's claim for false imprisonment against Tamez in his official capacity, the Court hereby DENIES Defendants' motion to dismiss for the same reasons provided in its discussion of Plaintiff's "official-capacity" false arrest claim. *See supra*, section IV-A(3).

## C.     Civil Conspiracy Under 42 U.S.C. § 1985

Plaintiff's complaint alleges that "[a]lthough defendants knew that plaintiff had not committed any crime and particular [sic] knew that he had not committed the crime of obstruction and retaliation under § 36.06 of the Texas Penal Code, they nevertheless conspired among themselves and other persons outside of the county attorney's office to bring this false charge for the sole purpose of retaliation and having the plaintiff arrested and humiliated publicly." Pl.'s Am. Compl. ¶ 38. Plaintiff further alleges "[i]n taking these actions the defendants conspired among themselfs [sic] and others to hinder, obstruct and impede the due course of justice and deprive the plaintiff of his due process rights and equal protections of the laws." *Id.* at ¶ 39.

A conspiracy under 42 U.S.C. § 1985 must aim at a deprivation of the equal protection of the law. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Section 1985 is comprised of three subsections. 42 U.S.C. §§ 1985(1)-(3). Section 1985(1) is limited in scope to actions preventing

-19-

federal officers from performing official duties. Since this is clearly a suit against a county and two

of its employees, only § 1985(2) or § 1985(3) could apply to the instant case. Those two sections,

however, require an allegation of a race-based or class-based discrimination. *Ryland*, 708 F.2d at

973 n.7 (an allegation that the defendants are motivated by some class based discrimination is

essential to the maintenance of a suit under the second portion of § 1985(2), which applies to

obstruction of justice in state courts"); *see also Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d

261 (5th Cir. 2001) ("[i]n this circuit, we require an allegation of a race-based conspiracy to present

a claim under § 1985(3)"). Thus, to set out a claim for conspiracy under 42 U.S.C. § 1985, Plaintiff

needed to allege Defendants' conspiracy against him stemmed from "some racial or perhaps

otherwise class-based invidiously discriminatory animus." *Griffin*, 403 U.S. at 102.

A liberal construction of Plaintiff's complaint reveals no facts which could indicate any racial

or class-based motive for Plaintiff's arrest. To the contrary, Plaintiff claims Defendants "conspired

among themselves . . . to bring this false charge *for the sole purpose of retaliation*." Pl.'s Am.

Compl. ¶ 38 (emphasis added). Plaintiff is not claiming he was arrested on account of his race, or

for some class-based animus toward special prosecutors in general. The Court agrees with

Defendants' primary assertion that Plaintiff failed to allege the minimum necessary elements of a

§ 1985 claim, and therefore, does not reach the merits of their alternative claim of governmental

immunity under the Texas Tort Claims Act. Accordingly, Defendants' motion to dismiss Plaintiff's

claim for civil conspiracy under 42 U.S.C. § 1985 is hereby GRANTED with prejudice.

## V.    CONCLUSION

Plaintiff states a valid cause of action against Defendant Tamez in his individual capacity for

false arrest and false imprisonment. Defendants' Motion to Dismiss is DENIED as to those claims.

The Court holds Plaintiff states facts sufficient to support a claim of municipal liability against Willacy County, by and through their official policymaker - Guerra - under *Monell*. While that finding would normally end the matter on a motion to dismiss, the Court also holds district attorneys' investigators are generally entitled to absolute prosecutorial immunity. Nevertheless, even if Tamez was generally entitled to absolute prosecutorial immunity, based upon the allegations, there is a question as to whether Tamez was acting lawfully within the scope of his prosecutorial role. If not, he could not be entitled to the privilege of absolute immunity in the instant case and his acts could be attributable to Willacy County. As such, the Court DENIES with prejudice Defendants' Motion to Dismiss Plaintiffs' false arrest and false imprisonment claim against Tamez in his official capacity. Finally, Plaintiff failed to plead the necessary elements of a cause of action against Defendants for civil conspiracy under 42 U.S.C. § 1985. Accordingly, the Court GRANTS with prejudice Defendants' Motion to Dismiss Plaintiff's civil conspiracy claim.

       SIGNED this 20th day of January, 2009.

 

Andrew S. Hanen
United States District Judge

-21-