IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

[JUN **2 5** 2010

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| GUSTAVO GARZA, UVALDO ZAMORA, | § | |
| and DAVID MARTINEZ, | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-08-084 |
| | § | |
| JUAN ANGEL GUERRA, Individually | § | |
| and in his Official Capacity, | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JNOV AND MOTION FOR NEW TRIAL

Pending before the Court are the Defendant's Motion for Judgment Non-Obstante Veredicto (JNOV) (Docket No. 93) and Motion for New Trial (Docket No. 94). Having considered the motions and responses, and for the reasons enumerated below, those motions are DENIED.

I.    BACKGROUND

The history of this case is quite lengthy.[1] According to the testimony at trial, the Defendant graduated from law school in 1990 and was appointed district attorney of Willacy County shortly thereafter due to the death of the then-current district attorney. In 1992, the Defendant ran for election to the district attorney's office, and Plaintiff Garza ran against him as a write-in candidate. At some point prior to the election, perhaps during the campaign, Guerra filed a criminal complaint against Garza alleging that Garza had assaulted him in his office. That case was dismissed only years later. Garza won the 1992 election.

---

[1]The following facts are not meant as findings of fact as the jury resolved the factual disputes, but are meant merely as a summary of the evidence given in order to put the court's rulings in context.

1

Garza and Guerra ran against each other for Willacy County district attorney again in 1996, 2000, and 2004, with the Defendant Guerra winning each of those elections. According to the Defendant, Garza was supported in each of his candidacies for district attorney by both the Raymondville Police Department and the Willacy County Sheriff's office. Those two offices allegedly made it very difficult for the Defendant to adequately investigate and prosecute cases during his tenure as district attorney because, according to the Defendant, he did not prosecute the people and in the manner that those two departments wanted him to prosecute. The Plaintiff Zamora was Chief of Police and the Plaintiff Martinez was a Sheriff's deputy during much of the time that the Defendant was district attorney and allegedly had conflicts with the Police and Sheriff's departments.

In January of 2007, a grand jury, to whom Guerra had been presenting cases for indictment in his capacity as district attorney, voiced concerns to the presiding state judge about how Guerra was conducting grand jury meetings and the indictment process. Among other things, the grand jury complained that Guerra was abusing his office and power as district attorney, attempting to have individuals indicted without presenting evidence, and using the grand jury process to intimidate individuals and/or get even. Due to these complaints, the judge appointed Plaintiff Garza special prosecutor and charged him with investigating the allegations made by the grand jury. Garza previously had been appointed special prosecutor to investigate alleged wrongdoings of a district attorney in a neighboring Texas county. Plaintiffs Zamora and Martinez were recruited to help Garza with his investigation of Guerra's alleged wrongdoings.

During the investigation, the Plaintiffs attempted to execute a search warrant at the district attorney's office on Sunday, February 11, 2007. On that day, the Defendant was holding a grand jury

2

meeting, although there was conflicting testimony as to whether that grand jury meeting was being held in accordance with the law or was merely called to thwart the execution of the search warrant. When the Plaintiffs arrived at the courthouse and learned that the grand jury was meeting, they asked to speak with the foreperson so they could explain that the grand jury meeting was not lawful and that the grand jurors would have to leave the premises so that Plaintiff Garza and his team could execute their search warrant. The grand jury assistant foreperson ("Ramirez") followed the foreperson to the front lawn of the courthouse to speak with the Plaintiffs, arriving a minute or two after the foreperson. There was conflicting testimony concerning whether Ramirez had voluntarily followed the foreperson or had been directed to do so by the Defendant.

Testimony revealed that, while the Plaintiffs were discussing the legality of the grand jury meeting with the foreperson, there was some commotion coming from the courthouse, and members of the media arrived. Some witnesses claimed that the Defendant Guerra was the cause of the commotion, and some speculated that Guerra had contacted the media, although Guerra denied having done so. There was also testimony that the Defendant grabbed the grand jury foreperson by the arm and attempted to pull her back into the courthouse so that she could not talk to the Plaintiffs about the legality of the grand jury meeting. Following the conversation between the Plaintiffs and the grand jurors, the grand jury left the courthouse, and the Plaintiffs searched the Defendant's office, pursuant to their warrant. Eventually that day, the Defendant was arrested for interfering with their search.

Some six weeks after this incident, Ramirez, the assistant grand jury foreperson who had been standing close to the foreperson to the front lawn of the courthouse on the day in question, came to the Defendant's office. While there, she signed an affidavit for the Defendant alleging that

3

she had been threatened with arrest by Garza and Zamora the day the Plaintiffs were attempting to execute the search of the Defendant's office.  There was conflicting testimony as to whether Ramirez came to the Defendant's office on her own accord or was asked by the Defendant to do so.  There was also conflicting testimony as to whether Ramirez arrived with an affidavit already prepared or wrote the affidavit while at the Defendant's office, as the Defendant and Ramirez testified.  Using Ramirez's allegations, and with the help of his investigator, Raul "Roy" Tamez, the Defendant prepared an affidavit in support of an arrest warrant for Garza and Zamora, alleging that they had violated Texas Penal Code Section 36.06, Obstruction or Retaliation.  There was testimony that the affidavits prepared by Guerra and Tamez omitted material facts and included material misrepresentations.  Tamez, at Guerra's direction, took the affidavits to a local magistrate to obtain an arrest warrant.  At least one magistrate declined to issue the warrant, but Tamez eventually obtained a warrant from a Justice of the Peace ("JP").

On the same day the Defendant and Tamez secured arrest warrants for Garza and Zamora, they also obtained an arrest warrant for Plaintiff Martinez based on his alleged violation of Texas Penal Code Section 37.08, False Report to Peace Officer or Law Enforcement Employee.  According to the Defendant and Tamez, Martinez had provided a false statement or report to an investigator concerning whether the Defendant Guerra had unlawfully sold a confiscated vehicle and pocketed the money.  There was testimony that this affidavit, too, omitted material facts and made material misstatements.  At least one magistrate declined to issue a warrant for Martinez's arrest, but Tamez eventually obtained a warrant from the same JP who issued warrants for Garza's and Zamora's arrests.  All of these charges against the Plaintiffs were eventually dismissed.

In 2008 and 2009, the Plaintiffs each filed a separate lawsuit against Willacy County, Roy

4

Tamez and Guerra.  All three Plaintiffs claimed, *inter alia*, that Guerra and Tamez had conspired to have the Plaintiffs wrongfully arrested and that Willacy County was liable under the principle of municipal liability.   In April 2009, these cases were consolidated into a single action (Docket No. 35).  This court granted partial summary judgment in favor of the Defendants (Docket No. 77), but allowed the Plaintiffs' false arrest claims to proceed to trial primarily due to the allegations and evidence that the Defendant and his investigator might have created false or incomplete affidavits in order to obtain arrest warrants for the Plaintiffs.  The Plaintiffs and Defendants Willacy County and Roy Tamez settled their disputes and filed a joint stipulation of dismissal prior to trial, leaving only the claims by the Plaintiffs against Defendant Guerra.

After four days of testimony, this court submitted to the jury the question of whether the Defendant had the Plaintiffs arrested without probable cause in violation of their Fourth Amendment rights.  *See* Final Jury Instructions and Verdict Form (Docket No. 86).  The jury found that the Defendant had in fact had the Plaintiffs arrested without probable cause and awarded the Plaintiffs $335,000 collectively in compensatory and punitive damages. *See id.*[2] The Defendant Guerra timely filed the present motions for JNOV and for a new trial.  The Defendant offered four reasons he should be granted either a JNOV or a new trial—insufficiency of the evidence, the Plaintiffs' misinterpretations of federal and state law, perjury by a Plaintiffs' witness, and res judicata.[3]

---

[2]The damages were awarded as follows: (1) Garza was awarded $20,000 in compensatory damages and $70,000 in punitive damages, (2) Zamora was awarded $35,000 in compensatory damages and $70,000 in punitive damages, and (3) Martinez was awarded $70,000 in compensatory damages and $70,000 in punitive damages.

[3]The Defendant also claims, in a supplement to his motion for JNOV and motion for new trial, that Plaintiff Garza had been removed as special prosecutor for failure to take an anti-bribery oath when appointed.  The Defendant argues that Garza's removal deems any action taken by Garza in his capacity as special prosecutor, including Garza's execution of the search

The Defendant's motions for JNOV and new trial are, to say the least, lackluster. The Defendant did not cite case law or, more importantly, did not cite to the transcript of the trial in this case in support of these motions. *See* Def.'s Mot. for JNOV; Mot. for New Trial. The Defendant also failed to cite any particular rules of civil procedure that would serve as the basis for his Motion for JNOV. Citations to case law, federal rules, or testimony would have been helpful to this court in reviewing these motions. Furthermore, the Defendant, in his motions, refers this court to attachments that allegedly support the Defendant's motions, but there are no attachments to the motions on file. The Defendant did manage to attach a document which he refers to as an affidavit and purports to be his own affidavit, but that document was not sworn to.[4] As such, it has no evidentiary value before this court. These issues notwithstanding, this court has done its best to make sense of the Defendant's arguments and find those documents to which the Defendant refers which may have been coincidentally attached to other filings previously made with this court, even if by parties other than the Defendant. Even making these concessions, as discussed below, the

---

warrant at the Defendant's office in February of 2007, null and void. Although this court has little to no testimony on the issue (the Defendant did not provide any evidence), it appears that Garza was removed as special prosecutor in connection with a separate, unrelated matter he was investigating and only after the facts giving rise to the Plaintiffs' causes of action took place. *See* Defs.' Roy Tamez and Willacy County's Mot. to Dismiss (Docket No. 44), Ex. E, at 13–26 (Deposition of Gusta Garza). That being the case, the court sees no reason to address the issue. Even assuming the Defendant is correct and the execution of the search warrant by Garza and his team was unlawful, that fact is not controlling because the Plaintiffs were arrested for allegedly threatening grand jurors and providing false statements or reports to law enforcement, not for executing an invalid search warrant.

[4]Arguably, the Defendant did not even sign the document. The signature line includes a typed signature in the same font as the rest of the document, possibly in an attempt to affix an electronic signature. The court gives the Defendant the benefit of the doubt in this regard, but that benefit helps the Defendant little because the document is still not sworn to and is still an attempt by the Defendant to put on evidence by affidavit discrediting a Plaintiffs' witness or arguing the facts of the case when he had ample opportunity to put on such evidence at trial.

6

Defendant cannot satisfy the standards required to be awarded a JNOV or a new trial, and his motions are hereby DENIED.

As discussed *supra*, the Defendant did not invoke any specific federal rule in support of his Motion for JNOV.  He did, however, reference Federal Rules of Civil Procedure (Rules) 50, 54(d)(2)(A) and 59 in his Motion for New Trial.  Because Rule 54(d)(2)(A) addresses the mechanism by which a prevailing party may obtain attorney's fees, this court will disregard the Defendant's invocation of that rule.  Because Rule 50 addresses the sufficiency of the evidence, it will only be addressed with respect to that issue, and it will be addressed as if the Defendant had invoked that rule in his Motion for JNOV.  Finally, the remaining three issues (misinterpretation of federal and state law, perjury, and res judicata) will be addressed as if they were raised under Rule 59, the Rule allowing for motions for new trial.

II.    THE DEFENDANT'S CHALLENGE TO THE SUFFICIENCY OF THE EVIDENCE IS DENIED.

     A.    *Standard of Review for a Motion for JNOV Based on the Insufficiency of the Evidence.*

Under Federal Rule of Civil Procedure 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may grant a directed verdict to the moving party on that issue.  FED. R. CIV. P. 50(a).  If a court denies a party's motion for directed verdict under Rule 50(a), the party may raise the issue again after a verdict has been reached.  FED. R. CIV. P. 50(b).  However, the advisory committee notes to Rule 50(b) instruct that "[a] motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made *at the close of all the evidence*."  FED. R. CIV. P. 50(b), advisory committee's note

(emphasis added).  When a party fails to move for a directed verdict at the close of *all* the evidence, a court should review any post-trial motion for judgment as a matter of law only for plain error.  *U.S. ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 964 (5th Cir. 1998); *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1003 (5th Cir. 1997).

Here, the Defendant failed to preserve his right to challenge the sufficiency of the evidence at any point during the trial.  Although the Plaintiffs responded to the Defendant's motions as though he had made a motion for directed verdict at the close of the Plaintiff's cases, this court has reviewed the trial transcript and concluded that the Plaintiffs are mistaken.  Instead, the Defendant made one motion for directed verdict based on res judicata and another based on insufficiency of the evidence supporting the Plaintiffs' malicious prosecution claims, claims which this court did not submit to the jury.  Applying Rule 50 and the advisory committee notes to the present case, this court could decline to entertain the Defendant's motion based on the insufficiency of evidence supporting the Plaintiff's § 1983 claims.  Nevertheless, out of an abundance of caution, this court will review the Defendant's challenge under the traditional "sufficiency of the evidence" standard.  Doing so will not prejudice the Plaintiffs because there was ample evidence to support the jury's verdict.

  B.  *The Court Finds There Was Sufficient Evidence to Support the Jury's Verdict and Accordingly Denies the Defendant's Motion for JNOV.*

In order to prove a claim under 42 U.S.C. § 1983, the Plaintiffs had to show that the Defendant (1) acted under color of law, and (2) violated the Plaintiffs' constitutional rights.  *See* 42 U.S.C. § 1983.  Success on such a claim based on false arrest requires the Plaintiffs to prove to the jury by a preponderance of the evidence that they were arrested without probable cause in violation of the Fourth Amendment.  *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).  "Probable cause

means 'the existence of such facts and circumstances as would excite the belief, in a reasonable

mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty

of the crime for which he was prosecuted.'" *Moore v. McDonald*, 30 F.3d 616, 620 n.2 (5th Cir.

1994) (quoting *Pendleton v. Burkhalter*, 432 S.W.2d 724, 727 (Tex. App.—Houston [1st Dist.]

1968, writ ref'd n.r.e.)). The jury, having heard four days of testimony, concluded that the Defendant

had in fact acted under color of law when he had the Plaintiffs arrested without probable cause. *See*

Final Jury Instructions and Verdict Form. Even applying the traditional Rule 50(a), "sufficiency of

the evidence" standard, there was ample evidence to support the jury's verdict.

      1.      The Evidence Supporting Plaintiffs Garza and Zamora's claim.[5]

The affidavits prepared by the Defendant and his investigator accused Plaintiffs Garza and

Zamora of violating Texas Penal Code § 36.06, Obstruction or Retaliation. That statute reads in

relevant part:

> (a) A person commits an offense if he intentionally or knowingly harms or threatens
> to harm another by an unlawful act:
>> (1) in retaliation for or on account of the service or status of another as a:
>>> (A) public servant, witness, prospective witness, or informant; or
>>> (B) person who has reported or who the actor knows intends to report
>>> the occurrence of a crime; or
>> (2) to prevent or delay the service of another as a:
>>> (A) public servant, witness, prospective witness, or informant; or
>>> (B) person who has reported or who the actor knows intends to report
>>> the occurrence of a crime.

TEX. PENAL CODE ANN. § 36.06 (Vernon 2009). In order to have Plaintiffs Garza and Zamora

arrested, the Defendant needed probable cause to believe they had committed some act that fell

within this statute. According to the Defendant, he and his investigator had reason to believe that

---

[5]This summary is not intended to be an exhaustive review of the record. Rather, it is a
summary of the salient points sufficient to address the issue.

9

Garza and Zamora, as they attempted to execute their search warrant at the Willacy County Courthouse, threatened to have the grand jurors arrested if they refused to leave the premises. The only evidence they had that such conduct took place was the affidavit of one grand juror who shared her version of the story six weeks after the incident. Based solely on this grand juror's statement, the Defendant and his investigator (Tamez) drafted an affidavit, for the latter's signature, alleging that Garza and Zamora had threatened grand jurors. Tamez thereafter presented that affidavit to a justice of the peace who issued an arrest warrant, and had Garza and Zamora arrested on these charges. Pl.'s Resp. to Defs.' Mot. to Dismiss, Ex. 2 (affidavit of investigator Roy Tamez).

The question squarely before the jury was whether the Defendant had probable cause to believe that Garza and Zamora had actually committed the crime they were accused of committing. To this end, the jury heard evidence, including the Defendant's own testimony, that neither the Defendant nor his investigator Roy Tamez ever heard Garza or Zamora threaten to have the grand jurors arrested. One witness to the events on the day in question testified that the Defendant was standing right next to the grand jurors when the Plaintiffs allegedly threatened to arrest them, placing him near Garza and Zamora and close enough that he could have heard anything that was said.

The jury also heard evidence, both from the Defendant and from Tamez, that the Defendant conducted no investigation and interviewed no one other than the one grand juror who reported the incident concerning the alleged threats made by Garza and Zamora, relying solely on the affidavit of that one grand juror. The jury also heard testimony that neither the Defendant nor Tamez interviewed any member of the media who was present when Garza and Zamora allegedly threatened to arrest the grand jurors. In the affidavit provided to the Justice of the Peace ("JP") who issued the arrest warrant, neither the Defendant nor his investigator disclosed that the investigator was not a

certified peace officer, a point which the JP testified would normally lead him to deny issuance of a warrant.  The affidavit also did not disclose the fact that Garza and Zamora were executing an apparently valid search warrant or that the grand jury was holding an unusual Sunday meeting that was arranged by the Defendant on short notice, without a bailiff, a court reporter or a district clerk, all of which are required to be present under state law, according to testimony offered to the jury. Finally, the evidence showed that, based on the information available to the Defendant at the time the arrest warrants were obtained, at least one other judge had declined to find probable cause to have Garza and Zamora arrested.

Thus, at the time the arrest warrants were obtained, the Defendant had only the disputed allegations of one grand juror.  Evidence was provided to the jury that the particular grand juror who alleged Garza and Zamora threatened to arrest her was a longtime friend of the Defendant's, was a longtime friend of Mr. Tamez's, was Mr. Tamez's immediate past employer, was not present during critical times when Garza and Zamora were speaking with the foreperson of the grand jury about the legality of the grand jury's meeting, did not complain of any threats for six weeks after the threats were allegedly made, was called by the Defendant to come to his office and provide an affidavit alleging that the Plaintiffs threatened her, had possibly talked to Tamez as well before coming to the Defendant's office, already had a written statement prepared when she came into the Defendant's office (contrary to her own testimony),  and later changed her story and testified that Zamora had not made any threats to arrest the grand jurors, directly contrary to her affidavit that formed the basis for Garza and Zamora's arrest.  Although much of this evidence was disputed, it is within the province of the jury to assess the weight and credibility of witness testimony and make its own decision about which witnesses are telling the truth. *See United States v. Scheffer*, 523 U.S. 303, 313 (1998) (citing

11

*Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891)).  The jury's assessment of credibility may be

the result of, among other things, the conduct of witnesses while on the stand and the way in which

questions are answered.  *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 628 (1944).  It is not the

place of the court to second-guess a jury's determination of which version of the facts is more

believable.

There was also circumstantial evidence that would lead a jury to conclude that the Defendant

did not have probable cause to arrest Garza and Zamora.  The Defendant testified at four different

times that he had, on more than one occasion, asked the Raymondville City Manager to fire Zamora.

He also testified (1) at length about the long-standing rivalry between himself and the three

Plaintiffs, the Sheriff's office where Plaintiff Martinez was a Deputy, and the Raymondville Police

Department where Plaintiff Zamora was Chief; (2) that had the Plaintiffs discontinued their

investigation of the Defendant following a stay order from a Texas court of appeals, he would have

felt no urgency to have the Plaintiffs arrested; and (3) that once he had obtained arrest warrants for

the Plaintiffs, he held a press conference to announce it to the community.  While not actual

evidence, the Defendant, who represented himself, in closing arguments to the jury, basically

suggested that the reason that he arrested the Plaintiffs (including Martinez) was to stop their probe

of his activities.  *See infra*, note 6.  It would have been reasonable for the jury to be suspicious of the

fact that arrest warrants obtained without the disclosure of all of the relevant facts to the JP for

Garza, Zamora, and Martinez, who were accused of committing two different crimes, were obtained

on the same day.  Given this evidence, and the evidence directly related to probable cause, it cannot

be said that a "reasonable jury would not have a legally sufficient evidentiary basis" to find that the

Defendant had engaged in conduct that led to the arrest of the Garza and Zamora without probable

12

cause, in violation of their Fourth Amendment rights.  FED. R. CIV. P. 50(a).

        2.     The Evidence Supporting Plaintiff Martinez's Arrest.

The affidavits created by the Defendant and his investigator that were the basis for Plaintiff

Martinez's arrest alleged that Martinez had violated Texas Penal Code Section 37.08, False Report

to Peace Officer or Law Enforcement Employee.  That statute reads in relevant part:

> (a) A person commits an offense if, with intent to deceive, he knowingly makes a
> false statement that is material to a criminal investigation and makes the statement
> to:
> > (1) a peace officer conducting the investigation; or
> > (2) any employee of a law enforcement agency that is authorized by the
> > agency to conduct the investigation and that the actor knows is conducting
> > the investigation.

TEX. PENAL CODE ANN. § 37.08.  The affidavit drafted by the Defendant and his investigator alleged

specifically that, "[a]ccording to a document submitted by Daniel Cavozos [sic]. . . Martinez under

oath informed him that Juan Angel Guerra privately sold a gray 2002 Toyota Camry 4-door vehicle,"

a vehicle which had been confiscated by state law enforcement officials and was later discovered to

have been sold properly and in accordance with the law.  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss,

Ex. A (affidavit of Roy Tamez) (Civil Action No. B-08-86, Docket No. 5).  For allegedly providing

information to Garza's investigative team which later turned out to be inaccurate, the Defendant had

Martinez arrested.

Although the direct evidence showing that the Defendant lacked probable cause to arrest

Martinez is not as strong as that evidence showing that he lacked probable cause to arrest Garza and

Zamora, the jury was nonetheless entitled to conclude that the Defendant did not have probable cause

to believe Martinez had violated article 37.08.  Most telling was the testimony of Detective Cavazos

who testified that he was never contacted by the Defendant to discuss what information, if any,

Martinez had provided to him, even though Cavazos was the investigator to whom Martinez allegedly made a false statement. Further, the Defendant admitted in his own testimony that he had never contacted Cavazos.

Furthermore, the jury had reason to conclude from the Defendant's questioning of witnesses that the Defendant was confused about what constitutes a false statement and what constitutes an honest statement which later turned out to be inaccurate. For example, the following colloquy took place when the Defendant was cross-examining Detective Cavazos, the investigator to whom Plaintiff Martinez allegedly made a false statement.

| Question: | At the time that that statement was given to you by Mr. Martinez, was the car actually privately sold, yes or no? |
|---|---|
| Answer: | No. [The car was not privately sold.] |
| Question: | No. So that's not a false statement? |
| Answer: | No. |
| Question: | Oh.  What is a false statement? |

In his closing argument, the Defendant also told the jury, "We already know that [Martinez] made a statement.  Maybe not intentionally.  It doesn't matter."  Contrary to the Defendant's apparent belief that when a statement is inaccurate it is necessarily false under § 37.08, the statute requires that the statement be made with "intent to deceive."  *See* TEX. PENAL CODE. § 37.08.  Intent *does* matter.  The jury charge included the language of this statute, and the jury presumably reviewed the language of the statute to decide for itself whether, based on the facts available to him at the time, the Defendant had probable cause to believe that Martinez had made a false statement to Cavazos. The jury could conclude from the Defendant's question of witnesses that the Defendant himself did not understand what was required in order to satisfy the elements of the law Plaintiff Martinez was accused of violating.

14

In addition to this direct evidence showing a lack of probable cause for Martinez's arrest, the jury was presented with the circumstantial evidence discussed previously with respect to Garza and Zamora. This circumstantial evidence included, among other things, (1) the longstanding rivalry between the Plaintiffs and the Defendant, (2) the Defendant's admission that had the Plaintiffs stopped their investigation into the Defendant's wrongdoing, there would have been no urgency to have them arrested,[6] and (3) the oddity that arrest warrants for all three Plaintiffs for two different crimes were obtained by the same individuals on the same day. Given this testimony, the evidence concerning probable cause for Plaintiff Martinez's arrest is not such that a " reasonable jury would not have a legally sufficient evidentiary basis to find for" that the Defendant engaged in conduct that led to the arrest of Martinez without probable cause in violation of his Fourth Amendment rights. FED. R. CIV. P. 50(a).

In light of the evidence presented to the jury, this court is of the opinion that sufficient evidence was present for the jury to find the Defendant had the Plaintiffs arrested without probable cause in violation of their Fourth Amendment rights. Accordingly, the Defendant's Motion for JNOV and Motion for New Trial, so far as they challenge the sufficiency of the evidence, are

---

[6]During closing arguments, the Defendant made statements that could have been interpreted by the jury to mean he was doing anything possible to keep the Plaintiffs from investigating him. For instance, after discussing how the Plaintiffs refused to stop their investigation, he stated, "God always put the right people in my path. Here comes Ms. Ramirez [the grand juror who gave the affidavit that formed the basis for Garza's and Zamora's arrests]. . . .And that was a blessing. We knew that we had enough for Martinez to stop him." He also stated, "I love my little county. That's why I did what I did because I love my little county," and "These three men were totally out of control. And who was going to go ahead and put control to my little county? I am." These statements certainly would suggest to the jury that the evidence supported the conclusion that the reason he had the Plaintiffs arrested was not because of any alleged activity but because they were investigating him. While not evidence, of course, Guerra actually made this exact statement to this court (in an argument outside the presence of the jury). This was practically the civil equivalent of a confession.

15

DENIED.

III.   THE DEFENDANT'S CHALLENGES BASED ON ALLEGED MISINTERPRETATION
       OF STATE AND FEDERAL LAWS, ALLEGED PERJURY, AND RES JUDICATA ARE
       DENIED.

Following a jury trial, a court may grant a new trial "for any reason for which a new trial has

heretofore been granted in an action at law in federal court. . . ." FED. R. CIV. P. 59(a)(1)(A).

"Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the

record or that substantial justice has not been done, and the burden of showing harmful error rests

on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481 (5th Cir. 1999) (quoting *Del*

*Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)).

   A.    *Cross-Examination, Objections to the Jury Charge, and the Defendant's Own*
         *Testimony Provided Ample Opportunity for the Defendant to Correct the Plaintiffs'*
         *Misinterpretation of State and Federal Laws and Show that One Plaintiffs' Witness*
         *Committed Perjury.*

In moving this court for a new trial, the Defendant argues that the Plaintiffs and their

attorneys misinterpreted to the jury certain provisions of state and federal law and offered the

perjured testimony of Ruben Cavazos. Def's. Mot. for New Trial, at 5–8. The Defendant does not

allege that the Plaintiffs or their attorneys misrepresented the legal elements of their claims to the

jury.

One of the statutes the Plaintiffs allegedly misrepresented to the jury, Tex. Penal Code §

37.08, was included in this court's jury charge. *See* Final Jury Instructions and Verdict Form

(Docket No. 86). The Defendant took no issue with this court's inclusion of that statute in the

charge. Nor did he take issue with the court's interpretation of that statute, the proper means by

which to challenge that interpretation was by an objection. The Defendant was given ample

opportunity to object to the jury charge or other legal rulings of this court, and he failed to do so.

If, on the other hand, the Defendant took issue with the Plaintiffs' or their attorneys' interpretations of laws, the proper means by which to challenge those interpretations is through cross-examination of witnesses or objections to their argument. All three Plaintiffs testified before the jury, and the Defendant had a full and fair opportunity to cross-examine them all. Following cross-examination, the credibility of each of the Plaintiffs' testimony concerning their actions under these statutes, would have been a question for the jury to decide. *See Scheffer*, 523 U.S. at 313. Furthermore, the Defendant himself testified at two different times during the jury trial. If misrepresentations were made at any point during the trial by the Plaintiffs, the Defendant had a full and fair opportunity to offer that evidence which could correct that misrepresentation.

With respect to the Plaintiffs' attorneys, any representations they made could have been addressed with an objection. During closing arguments, the Defendant could have objected to any reference that was not a part of the evidence presented at trial. Furthermore, the Defendant presented his own closing argument and could have used this opportunity to address any misrepresentations. Once the arguments are made, a witness's credibility is a question for the jury.

There are several mechanisms in place to prevent just what the Defendant complains of in his motions. This court cannot set aside the jury verdict or grant a new trial for the Defendant's failure to properly prepare and execute his defense or his failure to properly cross-examine witnesses and point out to the jury the incredible or inaccurate nature of their testimony. Without citations to erroneous rulings by this court, or without some offer of proof as to why the testimony was misleading to the jury, this court is left with the conclusion that no such misrepresentations took place or at least that the jury took note of the conflicting testimony and decided the issues based on

their own review of the evidence and the testimony of the parties.  Accordingly, the Defendant's

Motion for JNOV and Motion for New Trial, so far as they are based on the Plaintiffs' and Plaintiffs'

attorneys' alleged misrepresentations of law, are DENIED.

The Defendant also asserts in his motion for new trial that one of the Plaintiffs' witness,

Ruben Cavazos ("R. Cavazos"), perjured himself on the stand.[7]   Cavazos was called to testify by

the Plaintiffs concerning the sale of a 2002 Toyota Camry, and he was crucial to Martinez's case

because Martinez was accused of making a false statement to Daniel Cavazos concerning whether

the Camry had been sold in accordance with the law or instead had been sold privately by the

Defendant with the proceeds being pocketed.  According to the Defendant, Cavazos testified that the

proceeds from the sale of a 2002 Toyota Camry in question were never accounted for in Willacy

County Records, a fact Cavazos allegedly knew to be false.  After making this bald assertion,

however, the Defendant makes no attempt to show that Cavazos had any knowledge concerning the

sale of that Camry that differed from his in-court testimony.  Defendant's document which purports

to be an affidavit he executed that simply stated Cavazos perjured himself, but that document was

not sworn to and has no evidentiary value.  Furthermore, the Defendant alludes to an "Exhibit B,"

which supposedly is a true and correct copy of the journal entry in the District Attorney Cash Seizure

Revenue Fund, but no such document was provided to the court or attached to either of the

Defendant's motions.  Further, there is no explanation why this evidence was not offered at trial.

Without corroborating evidence, the Defendant's assertions that R. Cavazos perjured himself on the

---

[7]Not to be confused with Daniel Cavazos, the investigator on Plaintiff Garza's
investigative team and to whom Plaintiff Martinez was accused of making a false statement,
Ruben Cavazos was the Willacy County Clerk when the Defendant was accused of selling a
confiscated car and pocketing the money.

18

stand, resulting in a favorable verdict to the Plaintiffs that otherwise would not have occurred, are nothing more than that—bare assertions. Without the evidence to back up these assertions, the Defendant has not provided this court any reason to conclude that Cavazos perjured himself.

Even if Cavazos testified contrary to the facts as he knew them, the Defendant certainly could have challenged Cavazos's testimony in cross-examination or by calling his own witness to the facts. Cavazos, obviously, testified at trial and was available for the Defendant to cross-examine. The Defendant knew or should have known that the sale of the Camry in question would be an issue before the jury because the investigation surrounding the sale of the Camry led to the Defendant having Martinez arrested. Knowing this to be a key issue, the Defendant could have offered into evidence any documentation that contradicted Cavazos's testimony and discredited him in front of the jury, the body charged with assessing the credibility of witness. *See Scheffer*, 523 U.S. at 313. This is especially true since the document in question purportedly is a record of the District Attorney's Cash Seizure Reserve Fund, and he was the District Attorney. This court cannot excuse the Defendant's lack of preparation of his own defense or his failure to properly cross-examine witnesses by awarding a new trial or a judgment notwithstanding the verdict, especially considering the lack of evidence corroborating the Defendant's allegations of perjury. His Motions for JNOV and New Trial, so far as they are based on the allegedly perjured testimony of Ruben Cavazos, are DENIED.

> B.   *Because Neither the Justice of the Peace's Issuance of the Search Warrant Nor Plaintiff Martinez's Examining Trial Were Final Judgments, the Defendant's Assertion that Res Judicata Should Have Barred the Plaintiffs' Claims Lacks Merit.*

Of all the Defendant's reasons for requesting a new trial, the most troubling for this court is his argument that the Plaintiffs should have been precluded from bringing this lawsuit in the first

19

place because a determination of probable cause had already been made with respect to all of the Plaintiffs. *See* Def.'s Mot for New Trial, at 1–5. According to the Defendant, because the key issue at trial on a § 1983 false arrest claim is the presence or lack of probable cause to have the Plaintiffs arrested, a JP determination that sufficient probable cause existed to issue an arrest warrant for all the Plaintiffs precludes the Plaintiffs claims.[8]  With respect to Plaintiff Martinez specifically, the Defendant additionally argues that Martinez's claim is precluded because an examining trial was held in which a Texas county court at law judge found there to be probable cause to bind Martinez over for the grand jury.[9]

A federal court faced with deciding whether to give preclusive effect to a state court decision must apply the res judicata rules of the state in which the first decision was rendered.  28 U.S.C. § 1738 (stating that "records and judicial proceedings of any court" of any state "shall have the same

---

[8]This res judicata question should not be confused with the issue of whether, pursuant to Fifth Circuit in *Smith v. Gonzalez*, 670 F.2d 522 (5th Cir. 1982), the Defendant is insulated from liability by virtue of the JP's issuance of an arrest warrant, an issue this court addressed in its order on summary judgment.  The court held that the Defendant was not insulated from liability because there was a genuine issue as to whether the Defendant and his investigator had contrived to use false or purposefully incomplete affidavits in support of those attempts to obtain the arrest warrants.  The Defendant now argues that the JP's review of the evidence and issuance of an arrest warrant insulates him from liability not because the JP is an independent intermediary and as such breaks the causal change, but because the JP's probable cause determination has a claim preclusive effect.  Although very similar, the two issues are different in the context of the law.

[9]The issue of whether Martinez's false arrest claim is precluded because of the result of his examining trial first came to light during a hearing held just before trial.  In reviewing the Defendant's motion for summary judgment, the court notes that the Defendant did raise the issue of claim preclusion, but only with respect to JP's issuance of an arrest warrant.  *See* Def.'s Mot. for Summary J., at 5.  It was not clear from the Defendant's motion that an examining trial had been held.  This court, after recognizing the issue shortly before trial, made a preliminary ruling that Martinez's claim was not precluded because the examining trial was not a final ruling, but also advised all counsel that this issue was a real concern for the court.  The court invited briefing of this issue from both parties, and neither complied.

20

full faith and credit in every court within the United States. . . as they have by law or usage in the courts of such State. . . ."); *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Because the arrest warrant and examining trial finding were both issued by judges presiding in Texas courts, this court looks to Texas law in determining whether the Plaintiffs' claims are precluded by prior determinations of probable cause. For res judicata to apply under Texas law, the Defendant must prove "(1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, No. 08-0941, 2010 WL 1933022 (Tex. 2010) (slip opinion).

> 1.  The Justice of the Peace's Issuance of Arrest Warrants Does Not Preclude the Plaintiffs From Bringing a § 1983 Claim for False Arrest.

The court has little trouble deciding that the JP's issuance of an arrest warrant does not preclude the Plaintiffs from bringing a claim for false arrest under § 1983. Although the issue of probable cause is central to both the § 1983 action and the JP's issuance of an arrest warrant, this court cannot hold that the issuing of an arrest warrant is a "final determination on the merits," as required by the law of res judicata. *See Joachim*, 2010 WL 1933022. A final determination, for purposes of res judicata, "is one that awards judicial consequences that the law attaches to facts and determines controversies between the parties over subject matter included in the pleadings, thus terminating litigation to the extent that nothing remains to be done but to execute the judgment." *Partee v. Phelps*, 840 S.W.2d 512, 514 (Tex. App.—Dallas, 1992, no pet.). There was clearly more to be done following the JP's determination that probable cause existed to have the Plaintiffs arrested, including presenting the Plaintiffs' cases to a grand jury for indictment, arraignment and

then actually trying the Plaintiffs for the crimes they were accused of committing. Issuing the arrest warrant by no means determined the controversy between the parties involved. A more accurate description of the issuance of an arrest warrant would be that it *started* the controversy. Accordingly, the Defendant's Motion for New Trial, based on claim preclusion resulting from a JP's issuance of an arrest warrant, is DENIED.

Although the Defendant did not raise the issue, the court notes that collateral estoppel or issue preclusion could also have been argued by the Defendant based upon the facts at hand. Issue preclusion, as opposed to claim preclusion or res judicata, bars litigation of a particular issue which has been previously litigated and decided, regardless of whether the parties' entire claim should be precluded. To satisfy issue preclusion, a party must show that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action." *Sysco Food Services, Inc., v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

Issue preclusion cannot be proven with respect to the arrest warrants for at least two reasons. First, it cannot be said that the issue of probable cause was "fully and fairly litigated" when the arrest warrants were obtained from the JP. The Plaintiffs were not even present—much less allowed to assert defenses, cross-examine witnesses, call their own witnesses, or otherwise defend themselves—when the Defendant's investigator presented to the JP the affidavits in support of an arrest warrant. Second, the law's requirement that those facts actually litigated were "essential to the judgment in the first action" assumes that there was a judgment rendered. A JP's issuance of an arrest warrant cannot be a judgment.

When deciding whether a decision is a final judgment such that issue preclusion should

attach, a court should consider three factors: (1) whether the parties were fully heard on the issue, (2) whether the court hearing the parties supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or was in fact appealed. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 13, comment (g) (1982)). None of these three elements is satisfied by the simple presentation of an affidavit and the signing of an arrest warrant by a JP.   The Plaintiffs were not even present when the arrest warrant was obtained, the JP did not support its decision to issue an arrest warrant with any opinion, much less a "reasoned" one, and the decision to issue an arrest warrant was not appealable, much less actually appealed.  Accordingly, the court holds that issue preclusion is not appropriate given the facts of this case.

> 2.     The Count Court at Law Judge's Finding at an Examining Trial that Probable Cause Existed to Bind Plaintiff Martinez Over for the Grand Jury Does Not Preclude Martinez From Bringing a § 1983 False Arrest Claim.

This court finds much more troubling the issue of Martinez's examining trial and whether the examining court's finding of probable cause bars Martinez's claim for false arrest.  Under Texas law, a magistrate presented with a criminal defendant must inform the defendant "of his right to have an examining trial." TEX. CODE OF CRIM. PROC. ANN. art. 15.17 (Vernon 2009).   During an examining trial, the magistrate "shall proceed to examine into the truth of the accusation made." *Id.*, art. 16.01.  If a magistrate finds that probable cause does not exist to believe the defendant committed the crime for which he is charged, the magistrate releases the defendant and declines to bind him over for a grand jury determination of whether the defendant should be indicted for the crime he is accused of committing. *See, e.g.*, *Ex Parte Robinson*, 641 S.W.2d 552 (Tex. Crim. App. 1982).  If he finds probable cause, the case proceeds to the grand jury for possible indictment.

In the case of Plaintiff Martinez, an examining trial was held on June 15, 2007. *See* Def.'s Reply to Pls.' Resp. to Mot. for Summary J., Exs. A, B, C, D ("Martinez Examining Trial") (Docket No. 55).[10] Martinez was represented by counsel, was allowed to cross-examine witnesses, and was allowed to present witnesses of his own. *See id.* The full examining trial included 243 pages of testimony by various witnesses brought on behalf of the State of Texas and Martinez. *See id.* At the close of all the testimony, the examining court issued a ruling that probable cause existed to bind Martinez over to the grand jury. *See id.*

As stated *supra*, a finding of claim preclusion requires a showing of "(1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Joachim*, 2010 WL 1933022. Assuming, without holding, that the last two elements are satisfied, the court holds that the examining trial is not the type of "prior final determination on the merits" that should result in claim preclusion. The merits of a criminal charge, although addressed at an examining trial, are not the focus of an examining trial. The goal of an examining trial is to determine whether probable cause exists to believe the defendant committed the crime for which he was charged. *See, e.g.*, *Ex Parte Robinson*, 641 S.W.2d at 552. The merits of the crime are not finally decided.

The examining trial decision is not a final judgment such that it "awards judicial consequences" or terminates litigation to the extent that "nothing remains to be done but to execute

---

[10]The court notes that the Defendant Guerra did not submit a copy of the transcript of the examining trial himself. Instead, the court has had to sift through submissions by other defendants who settled prior to trial in order to address the Defendant's argument that res judicata applies.

the judgment." *Partee v. Phelps*, 840 S.W.2d 512, 514 (Tex. App.—Dallas, 1992, no pet.). It has been recognized instead as a defendant's "opportunity to discover the State's case against him." *Green v. State*, 872 S.W.2d 717, 721 (Tex. Crim. App. 1994). If an examining trial results in a finding of probable cause, the defendant is bound over for a grand jury to determine whether the defendant should be indicted. *See Guerra v. State*, 690 S.W.2d 901, 913–14 (Tex. App.—San Antonio 1985, no pet.). If, on the other hand, an examining trial results in a finding of no probable cause, the defendant is released from custody but is not immune from being charged again or indicted by the grand jury for the same crime. *See Ex Parte Robinson*, 641 S.W.2d 552. In neither scenario can it be said that judicial consequences have been awarded or that nothing remains but to executed the judgment, as the law requires. Because a state court's ruling following an examining trial is not a "final judgment on the merits," the court holds that the ruling that probable cause existed in Martinez's examining trial does not preclude him from bringing a § 1983 action for false arrest.

More problematic is whether the finding of probable cause following Martinez's examining trial satisfies the elements of issue preclusion. As opposed to claim preclusion, which precludes an entire claim from being litigated, issue preclusion prevents parties from re-litigating a particular issue which has been previously decided. In this case, the issue of probable cause was at issue both in Plaintiff Martinez's examining trial and in this court's trial of Martinez's § 1983 action. *See* Martinez Examining Trial; Final Jury Instructions and Verdict Form.

As stated *supra*, the elements of issue preclusion are whether "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first

action." *Sysco Food Services, Inc.*, 890 S.W.2d 796, 801 (Tex. 1994). The court, although admitting this is a difficult question, holds that the elements of issue preclusion are not satisfied in this case.

First, the court is not satisfied that the facts sought to be litigated in Martinez's § 1983 action (i.e., probable cause) were fully and fairly litigated during Martinez's examining trial. At the examining trial, Martinez had every opportunity to cross-examine the State's witnesses, present his own witnesses, and otherwise prove a lack of probable cause before the examining court. *See* Martinez Examining Trial. However, this court is not convinced that the issue of probable cause litigated at the examining trial was the same as the issue of probable cause that was litigated in Martinez's § 1983 action for false arrest. In the latter case, this trial was focused on what was known at the time the arrest warrant was sought from the JP. In the former, the court looked at what was known and presented some three months later at the time of the examining trial. It had much more information than the JP who issued the warrant had. For instance, it seems to the court that the issue of probable cause litigated and decided at the examining trial could have been based on facts learned after Martinez was arrested and not necessarily based on the probable cause that existed at the time Martinez was arrested. *Compare Parm*, 513 F.3d 135 at 142 (holding that a plaintiff bringing a false arrest claim under § 1983 "must show that he was arrested without probable cause. . . .") *with* TEX. CODE CRIM. PROC. ANN. art. 16.01 (holding that a magistrate is to "examine into the truth of the accusation made" without mentioning the presence of probable cause in the minds of the officers at the time of arrest or the time they obtained an arrest warrant). This concern that the issue of probable cause at an examining trial may be determined at a different point in time with different or additional evidence than that of probable cause in a § 1983 claim for false arrest, is particularly acute in this case because the facts show that Martinez was arrested in March of 2007 and did not receive an

examining trial until June of that year. The Defendant, who was the prosecutor presenting the state's case against Martinez during the examining trial, had almost three months during which he theoretically could have obtained additional evidence, learned additional facts, and secured additional witnesses that supported a finding of probable cause to believe that Martinez committed the crime he was accused of committing. It is certainly clear that he presented much more evidence at the examining trial than the limited information he and his investigator did to the JP.

Furthermore, at least one case in Texas has discussed the numerous ways a defendant at an examining trial, under normal circumstances, may be prevented from fully and fairly litigating the issue of probable cause. *See Russell v. State*, 604 S.W.2d 914, 922 (Ct. Crim App. 1980) (observing that criminal defendants are often restricted in their cross-examination, magistrates sometimes fail to adequately assess the credibility of witnesses, defense attorneys are often told to "move along" because magistrates have heard enough, and defense attorneys often do not attempt to engage in thorough cross-examination because of the admonitions of courts).[11]

Even assuming the facts of this case satisfied the first element of issue preclusion, this court holds that the second element of issue preclusion, i.e. that the facts litigated in the examining trial "were essential to the judgment in the first action," has not been satisfied in this case. *Sysco Food Services, Inc.*, 890 S.W.2d 796, 801 (Tex. 1994). Texas courts have held that an examining trial's determination of probable cause is not a final judgment for purposes of issue preclusion. *See, e.g.*, *Ex Parte Robinson*, 641 S.W.2d at 556 ("The discharge at the examining trial was not a final

---

[11]The court notes that these concerns did not seem to arise during Martinez's examining trial. Nevertheless, to blanketly hold as a matter of law that an examining trial has preclusive effect on a later § 1983 action for false arrest as a matter of law would be to ignore these very real concerns and possibly bind defendants who were not given the opportunities Martinez seems to have been given.

judgment."). Furthermore, an examining court's finding of probable cause does not satisfy the three factors a court should consider when deciding whether a decision is a final judgment such that issue preclusion should attach (i.e., (1) whether the parties were fully heard on the issue, (2) whether the court hearing the parties supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal or was in fact appealed. *Van Dyke*, 697 S.W.2d at 385 (Tex. 1985)). At least one of these factors cannot be satisfied in the present case.

This court has already addressed its concerns that the parties, although fully heard by the examining court, may have been addressing probable cause at the time of the examining trial and not probable cause at the time of the arrest or issuance of arrest warrants. Additionally, the examining trial judge's decision concerning probable cause was not supported by a reasoned opinion. Instead, the judge, after hearing all the evidence, simply stated, "I think there are several matters here—fact findings that are better served for the jury. I'm going to go with that there is probable cause. I'm ordering this defendant for trial." Martinez Examining Trial, at 242. That being the totality of the examining court's opinion, this court would be hard-pressed to hold that this decision was supported by a reasoned opinion, as required for issue preclusion to apply. *See Van Dyke*, 697 S.W.2d at 385.

Finally, the judge's ruling following the examining trial was not an appealable decision (and was not in fact appealed by Martinez). Rulings in examining trials, similar to rulings following suppression hearings, are preliminary rulings under Texas law and are subject to reconsideration by the court at any time prior to trial. *See State v. Rodriguez*, 11 S.W.3d 314, 322–23 (Tex. App.—Eastland, 1999, no petition) (holding that civil collateral estoppel does not apply to a court's finding of probable cause at a hearing on a motion to suppress). In Texas, appellate courts have no jurisdiction over interlocutory rulings unless those rulings are specifically made appealable by

28

statute.  *See* TEX. CONST. art. 5, § 6; *Pelt v. State Bd. of Ins.*, 802 S.W.2d 822, 826 (Tex.
App.—Austin, 1990, no petition).  The Defendant has pointed to no Texas statute or case, and this
court has been unable to find one, that makes a examining court's determination of probable cause
final and appealable.

Given the factors this court should consider when determining whether an examining court's
decision is final, and given the facts of this case, this court holds that the finding of probable cause
at Plaintiff Martinez's examining trial was not a final judgment.  Accordingly, the state court's
finding of probable cause does not carry with it either claim preclusion or issue preclusion such that
Martinez should have been barred from bringing his § 1983 claim against the Defendant.  The
Defendant's Motion for New Trial, so far as it is based on res judicata, is DENIED.

IV.   THE FINDING OF PROBABLE CAUSE AT MARTINEZ'S EXAMINING TRIAL DOES
      NOT INSULATE THE DEFENDANT FROM LIABILITY.

There is one other point worth noting in this case, and that is the "hypothetical" argument that
the Defendant might be insulated from liability for Martinez's false arrest by virtue of the examining
court's finding of probable cause.  This court describes this issue as hypothetical because the issue
was not raised by the Defendant in either his Motion for JNOV or Motion for New Trial.  This court
held, in its order on the Defendant's motions for summary judgment, that under *Smith v. Gonzalez*,
670 F.2d 522 (5th Cir. 1982), an individual who presents information to a magistrate and obtains an
arrest warrant is typically insulated from liability.  *See Smith*, 670 F.2d at 526.  The *Smith* Court held
that, "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not
a false arrest" because "the intermediary's decision to issue a warrant or return an indictment breaks
the causal chain and insulates the initiating party."  *Id.* (citing *Rodriguez v. Ritcher*, 556 F.2d 1185,

1193 (5th Cir. 1977)). However, as this court also held, "the chain of causation is broken only where all the facts are presented to the [intermediary], where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information. . . ." *Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir. 1988). This case was allowed to proceed to trial because this court decided there was a genuine issue as to whether the alleged malicious motives of the Defendant and his investigator had led them to withhold relevant information or even give false information in order to obtain arrest warrants for the Plaintiffs. *See* Court's Order on Motions for Summary Judgment, at 7–8 (Docket No. 77).

In addressing the issue of whether Martinez's examining trial had claim preclusive effect, the same question naturally followed: If a law enforcement official is typically insulated from liability based on a magistrate's finding of probable cause, and the only reason the Defendant in this case was not insulated from liability was because the Plaintiffs provided evidence that material misstatements and omissions were made to the magistrate, why does not the examining court's probable cause finding, which was issued only after Martinez was given a full and fair opportunity to present all the facts and correct any misstatements made by the Defendant, provide the Defendant with the same type of insulation typically accorded when a magistrate or JP is presented with all the facts and issues a valid arrest warrant? The court has been unable to find any case law raising this aspect. Nevertheless, the court is convinced that the Defendant should not be insulated from liability by virtue of the examining court's finding of probable cause, some three months after the arrest.

The United States Supreme Court has held that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161

30

(1992). The Fifth Circuit in *Smith*, by holding that an independent intermediary's finding of probable shields a law enforcement officer from liability for false arrest, did not undermine this purpose. An independent intermediary's determination of probable cause alleviates the concern that state actors will use their badge of authority to deprive individuals of their rights to be free from false arrest. Furthermore, the Fifth Circuit in *Hand*, by holding that law enforcement officials are not shielded from liability for false arrest when malicious motives lead them to hide relevant facts or make material misstatements to the independent intermediary, did not undermine the purpose of § 1983. When an independent intermediary's determination of probable cause is tainted by the malicious motives, acts, and or omissions of law enforcement officials, the fear that individuals will be deprived of their rights to be free from false arrest, reappears, as if no intermediary had found probable cause in the first place.

Were this court to find that an examining court's finding of probable cause supplies the defendant with immunity from liability, however, the purposes of § 1983 would be undermined. The *Wyatt* court, in explaining the purpose behind § 1983, included the word "deter," a word which carries with it a notion of prevention. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 314 (10th ed. 2001) (defining the word "deter" as "to turn aside, discourage, or *prevent* from acting" (emphasis added)). In the context of false arrest, this means that § 1983 was designed to prevent the arrest of individuals *before* a determination of probable cause had been made. *See Parm*, 513 F.3d at 142. Fifth Circuit case law upholds this purpose by excusing a law enforcement official from liability for false arrest only *after* he makes a full and fair presentation of the facts to a neutral intermediary, and not before.

If this court were to hold that an examining court's after-the-fact finding of probable cause

31

shielded an arresting officer from liability for an earlier false arrest, that holding would not uphold the purposes of § 1983 in the context of false arrest. The language of the Texas Code of Criminal Procedure article 16.01, which governs examining trials, requires a magistrate to "examine into the truth of the accusation made," not necessarily the facts as the arresting officer knew them at the time the warrant was issued or at the time of arrest. TEX. CODE CRIM. PROC. ANN. art. 16.01 (Vernon 2009). Furthermore, article 16.02 holds that a "magistrate may at the request of *either* party postpone the examination to procure testimony." *Id.* at § 16.02.

If this court were to find that the examining trial acted to break the causal chain, it would be conceivable that law enforcement officials could acquire a warrant using false pretenses, then arrest individuals and subsequently, based on other evidence presented at the examining trial, convince a judge of the existence of probable cause and ultimately be shielded from any § 1983 liability, even though the original arrest was based upon tainted evidence, and definitely not based on probable cause. This concern is particularly acute in the present case because Plaintiff Martinez was given an examining trial months after his arrest, giving the Defendant ample time to procure testimony and evidence that may or may not have been available to him at the time of Martinez's arrest. Given these concerns, and having been unable to find any binding precedent on the issue, this court is compelled to hold that the examining court's finding of probable cause, being later in time and based upon different evidence, does not, as a matter of law, shield the Defendant from liability for Martinez's false arrest. To do so would be to provide an unnecessary and unjustified exception to liability in the context of § 1983 false arrest claims.

V.    CONCLUSION

Having considered the Defendant's Motion for JNOV and Motion for New Trial, the court

32

holds that there was sufficient evidence to support the jury's finding that the Defendant engaged in conduct which resulted in the Plaintiffs being arrested without probable cause in violation of their Fourth Amendment rights.  The court also holds that the Defendant had ample opportunity to address any evidence presented by the Plaintiffs or statements made by their attorneys during trial, and that the resolution of these issues was within the province of the jury to decide.  Finally, after careful consideration, this court concludes that neither the JP's issuance of arrest warrants for the Plaintiffs, nor the finding of probable cause following Plaintiff Martinez's examining trial serve to preclude the Plaintiffs from bringing suit against the Defendant for false arrest.

This court noted *supra* that the Defendant's motions were not a model of clarity.  This court, with this opinion, overrules any and all points of contention raised by the Defendant, whether specifically addressed in this opinion or not.  The Motion for JNOV and Motion for New Trial are therefore overruled in their entirety.

Signed on this 25th day of June, 2010.

Andrew S. Hanen
United States District Judge